IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BDDW DESIGN, LLC and | : | |
| TED TYLER HAYS | : | |
| Plaintiffs | : | CIVIL ACTION |
| | : | |
| v. | : | No. _____ |
| | : | |
| NINE ORCHARD PARTNERS, | : | |
| LLC, NINE ORCHARD OWNER, | : | |
| LLC, JONATHON THORSON, | : | |
| and GRACE SONG | : | |
| Defendants | : | |

## **COMPLAINT**

Plaintiffs BDDW Design LLC ("BDDW") and Ted Tyler Hays ("Hays") (collectively, "Plaintiffs"), by and through their undersigned attorneys, hereby bring this Complaint (the "Complaint") against Defendants Nine Orchard Partners LLC ("Nine Orchard Partners" or "Prior Hotel Owner"), Nine Orchard Owner LLC ("Nine Orchard Owner" or "Current Hotel Owner"), Jonathan Thorson ("Thorson") and Grace Song ("Song") and allege as follows:

## **INTRODUCTION**

1.      This action arises from Nine Orchard Partners and Nine Orchard Owner's alteration and continued unauthorized use of original works of visual art created by Plaintiff Hays, and from their refusal to honor the parties' agreement governing the design of two penthouse suites at the Nine Orchard Hotel (the "Hotel") in New York City.

2.      Plaintiff BDDW, led by its principal creative director and artist, Mr. Hays, entered into an agreement (the "Agreement") with Defendant Nine Orchard Partners pursuant to which Hays would design, furnish, and stage two penthouse suites (the "Penthouse Suites") using BDDW's original furniture, artwork, lighting, and related artistic works (the "Art and Objects").

3.      In exchange for providing high-end, custom-designed works with a market value in excess of $800,000 at a substantially discounted service fee of $260,000, the parties agreed that Hays would retain exclusive creative control over the design and presentation of the Penthouse Suites and would be publicly associated as their designer.

4.      The parties' arrangement was mutually beneficial: Nine Orchard Partners obtained original, high-value works and the prestige of collaboration with a recognized designer; Plaintiffs received both partial payment of a service fee and the reputational and promotional benefit of exclusive authorship and control of the Penthouse Suites.

5.      Plaintiffs fully performed under the agreement by designing and installing the Art and Objects. Nine Orchard Partners, however, paid only half of the agreed fee, unilaterally altered Hays's completed design without consent, and refused to return the Art and Objects after Plaintiffs demanded their removal.

6.      The subsequent purchaser of the Hotel, Defendant Nine Orchard Owner, has continued to display and commercially exploit the altered Art and Objects without authorization, while prominently associating the Penthouse Suites with Hays's name.

7.      These actions violate the parties' agreement and infringe Hays's moral rights under the Visual Artists Rights Act of 1990, 17 U.S.C. § 106A ("VARA"), by intentionally modifying and publicly displaying his works in a manner prejudicial to his honor and reputation.

8.      During efforts to resolve the dispute, Defendants Jonathan Thorson and Grace Song—judgment creditors of BDDW—intervened by directing enforcement efforts against funds owed by Nine Orchard Partners to Plaintiffs and aligning themselves with the Hotel's litigation posture. As a result, ongoing settlement discussions were disrupted and Plaintiffs' contractual and

prospective business relationships (including BDDW's prospective future relationship with the Current Hotel Owner) were further damaged.

9.     Plaintiffs bring this action to obtain the return of their original Art and Objects, to prevent further unauthorized modification and display, to recover unpaid sums and consequential damages, and to redress the intentional interference with their contractual and business relationships.

## THE PARTIES

10.     Plaintiff BDDW is a New York limited liability company located at 3720 Jasper Street, Philadelphia, PA 19124.

11.     Plaintiff Hays is an adult individual maintaining an address at 2201 St. James Place, Philadelphia, PA 19103.  Mr. Hays is the owner of BDDW.

12.     Defendant Nine Orchard Partners is a Delaware limited liability company with a registered address of 80 State Street, Albany, NY 12207.  Nine Orchard Partners owned and operated the Hotel located at 9 Orchard Street, New York, NY 10002 from approximately 2013 until 2025 when it was sold to Defendant Nine Orchard Owner.

13.     Defendant Nine Orchard Owner is a Delaware limited liability company with a registered address at 28 Liberty Street, New York, NY 10005. Nine Orchard Owner purchased the Hotel from Nine Orchard Partners in 2025.

14.     Defendant Jonathan Thorson ("Thorson") is an adult individual maintaining an address at 28-30 Greene Street, Unit 5-E, New York, NY 10013.

15.     Defendant Grace Song ("Song") is an adult individual maintaining an address at 2531 Trenton Avenue, Unit 407, Philadelphia, PA 19125.

## JURISDICTION AND VENUE

16.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Visual Artists Rights Act of 1990, 17 U.S.C. § 106A.

17.    This Court has personal jurisdiction over Defendants because Defendants purposefully directed their conduct toward Plaintiffs in this District, including by contracting with Plaintiffs in Pennsylvania, communicating with Plaintiffs in Pennsylvania, accepting performance from Pennsylvania, and causing injury to Plaintiffs in this District.

18.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District, including Plaintiffs' creation of the Art and Objects, performance under the parties' agreement, and the harm suffered by Plaintiffs in this District.  Additionally, at least one of the defendants – Defendant Song – resides in this district.

## FACTUAL ALLEGATIONS

### A.    The Prior Hotel Owners Breach the Agreement and Violate the VARA

19.    On October 8, 2021, the parties entered into the express oral Agreement with the following terms:

A. BDDW, through its principal artist Mr. Hays, agreed to design, furnish, and stage the Penthouse Suites with its original Art and Objects, which consisted of irreplaceable furniture, rugs, artwork, lighting, and other fixtures;

B. The parties agreed that their collaboration would be publicized, and Plaintiffs would therefore be provided with total creative control over the design of the Penthouse Suites, as it was integral for Plaintiffs to manage its creative reputation

on such a high-profile project;

C.  As consideration, the parties agreed that BDDW would materially discount the price of the services and associated Art and Objects from an amount in excess of $800,000 to a modest $260,000 fee. That fee was to be paid in two installments by Nine Orchard Partners (an initial deposit and a completion payment); and

D.  BDDW and Mr. Hays would also have the ability to use its exclusive design of the Penthouse Suites to promote its own business.

20.     The consideration exchanged in connection with the Agreement was intended to be mutually beneficial: it provided Nine Orchard Partners with design services and the delivery and installation of all contracted items, including furniture, rugs, art, and lighting (i.e., the Art and Objects) with a collective value that greatly exceeded the modest $260,000 fee it was to pay, while providing BDDW with the highly valuable opportunity to promote its business through its exclusive design of the Penthouse Suites in Nine Orchard Partners' high-profile Hotel.

21.     The Agreement was consummated following a series of discussions beginning in early 2019 between BDDW, though Mr. Hays and its sales representatives, and Nine Orchard Partners, through its owner Andy Rifkin ("Rifkin"), where the parties specifically negotiated and agreed-upon each of these express terms.

22.     On October 8, 2021, following the consummation of the Agreement, BDDW issued Nine Orchard Partners an invoice, which further evidences the existence of the Agreement and is consistent with its terms (the "Invoice").

23.     Over the following two years, BDDW's representatives made no fewer than 20 site visits to the Hotel and engaged in countless communications with Nine Orchard Partners' representatives as the project was ongoing. During this period, BDDW ultimately supplied as part

of its design services in excess of $800,000 worth of Art and Objects—much of which is rare, "one-of-a-kind", and/or irreplaceable.

24.    BDDW would not have supplied Nine Orchard Partners with design services by a world-famous designer and supplied Art and Objects for a mere $260,000 fee (only $130,000 of which was actually paid) if Plaintiffs were not likewise intended to reap the many promotional benefits of being the sole and exclusive designer of the Penthouse Suites.

25.    Indeed, at first, the parties' Agreement appeared to be mutually beneficial consistent with its terms as numerous highly respected publications including *The Wall Street Journal* and *The World of Interiors* gave positive reviews of the partnership between BDDW and the Hotel during the 2022-2023 timeframe.[1]

26.    On or about August 17, 2023, BDDW's representatives reached out to Nine Orchard Partners to inquire about the remaining $130,000 completion payment due per the Agreement, as its exclusive design of the Penthouse Suites was completed at that time.

27.    In that communication, BDDW's representative specifically informed Nine Orchard Partners that BDDW had "delivered all of the pieces," which thus fulfilled BDDW's obligations under the Agreement to provide design services and decorate, furnish, and/or stage the two Penthouse Suites and thereby contractually obligated Nine Orchard Partners to remit the remaining payment without delay.

---

[1] <u>See</u> Lane Florsheim, *This is NYC's Hottest Neighborhood*, Wall St. J., Aug. 19, 2022, https://www.wsj.com/articles/new-york-manhattan-lower-east-side-neighborhood-restaurant-hotel-11660843894?no_redirect=true&gaa_at=eafs&gaa_n=ASWzDAj6HsMt4cg18CXQ2OdqH9LImXX133pLIrbIdEaerqWOC3Fzk7BzYIVMXoTKaDw%3D&gaa_ts=68b10667&gaa_sig=lwM1U4ZDFdnbMrgF_9jpQ_tC7ZZxIRfRRF16itwP60jdoF5HA8nrOVlp_KcWgib78HsTDmJgVHp_IesWR1s1UQ%3D%3D; Gianluca Longo, *Explore: On The Air*, The World of Interiors, July 13, 2023, https://www.worldofinteriors.com/story/nine-orchard-new-york-city/.

28.    In response, Mr. Rifkin told BDDW that same day to "[p]lease explain to your accounting department that the project has been delayed and a payment at this time does not make sense. Thanks."

29.    On or about October 19, 2023, BDDW's representatives reached out to Nine Orchard Partners again to inquire about the outstanding completion payment, to which Nine Orchard Partners entirely failed to respond.

30.    More importantly and unbeknownst to BDDW, during this time, Nine Orchard Partners redesigned the Penthouse Suites without Mr. Hays' consent in breach of the express terms of the Agreement, which specifically provides that Mr. Hays maintain complete and exclusive design control over the Penthouse Suites.

31.    Among the original works installed by Hays in the Penthouse Suites was a large-scale painted tapestry created by Hays as a focal artistic element within one of the suites. The tapestry is a one-of-a-kind, hand-painted pictorial work authored and executed by Hays as a standalone work of visual art, not a mass-produced or utilitarian decorative object.

32.    The Penthouse Suites were conceived and realized by Hays as a unified artistic composition in which individual works—including the painted tapestry and other original artworks—were intentionally integrated into a cohesive visual whole. While each original artwork stands independently as a protected work of visual art, the surrounding elements—including wall color, spatial arrangement, and lighting—were deliberately selected by Hays to enhance and present those works as part of a unified aesthetic expression.

33.    At the time of installation in one of the suites, Hays selected and approved a white wall backdrop against which the tapestry was mounted. The white wall was intentionally chosen

to create a specific visual contrast, tonal balance, and compositional effect integral to the artistic presentation of the tapestry.

34.    Without Hays's knowledge or consent, Nine Orchard Partners subsequently repainted the entire room in which the tapestry is displayed a deep red color, thereby eliminating the original contrast between the tapestry and its backdrop and materially altering the visual presentation and expressive impact of the work (and the room as a whole).

35.    The repainting of the room fundamentally changed the aesthetic context in which the tapestry is perceived, resulting in a presentation that is inconsistent with Hays's artistic intent and that Hays considers aesthetically distorted and reputationally damaging.

36.    This was particularly crucial given that the partnership was announced publicly, and the poor design choices made by Nine Orchard Partners would negatively reflect on BDDW, and its principal artist, Mr. Hays.

37.    Indeed, Nine Orchard Partners' wrongful alterations of Mr. Hays' design of the Penthouse Suites ultimately diminished the integrity of Mr. Hays' work, caused reputational harm to both Mr. Hays and BDDW, and destroyed their ability to promote Mr. Hays' exclusive design of the Penthouse Suites, a centerpiece of the consideration in the Agreement. In fact, a review of the Hotel's website today still features the unapproved Penthouse Suites (including the red painted room) prominently.

38.    In light of this material breach of the Agreement, on or about September 24, 2024, a representative for BDDW reached out to Nine Orchard Partners to attempt to mitigate its ongoing damages.

39.    In that communication, given that it was clear that Nine Orchard Partners was not going to abide by the terms of the Agreement and was going to irreparably harm Plaintiffs'

reputations in the process, BDDW's representative offered to refund Nine Orchard Partners the deposit in exchange for allowing BDDW to pick up the previously delivered Art and Objects at BDDW's own cost.

40.    BDDW sought this remedy in part because it did not want its brand associated with the Penthouse Suites that had been materially and unilaterally altered by Nine Orchard Partners without the consent of BDDW and/or Mr. Hays as per the Agreement.

41.    Moreover, as Nine Orchard Partners had wrongfully interfered with Mr. Hays' design of the Penthouse Suites, BDDW was no longer benefitting from the highly valuable opportunity to promote its business through its exclusive design of the Penthouse Suites, an extremely valuable portion of the consideration exchanges as part of the Agreement. Defendants refused to accept BDDW's offer.

42.    Thus, in material breach of the Agreement, Nine Orchard Owner remained in possession of the Art and Objects, which are being degraded through their ongoing use by the Hotel, and is interfering with Mr. Hays' exclusive design of the Penthouse Suites thereby tarnishing both his and BDDW's reputations, and is further depriving Plaintiffs from the ability to promote their exclusive design of the Penthouse Suites, where the services and supplied Art and Objects dwarf the extraordinarily discounted service fee provided for under the Agreement (only half of which ultimately was paid, in any event).

43.    Nine Orchard Partners' wrongful acts have caused, and continue to cause, Plaintiffs substantial harm.

**B.    The Hotel is Sold and the Current Hotel Owners Agree to Renegotiate the Agreement With BDDW**

44.    During the summer of 2025, it was announced that the Hotel was in negotiations to be sold from Nine Orchard Partners to Nine Orchard Owner.

45.     Shortly after this announcement, the CEO of Nine Orchard Owner, Larry McGuire, reached out to Mr. Hays via text message in an apparent attempt to help resolve the problems caused by Nine Orchard Partners and to and renegotiate the Agreement prior to the consummation of the sale of the Hotel.

46.     In those communications, Mr. McGuire not only expressed his deep interest in continuing the partnership with the Hotel and BDDW after his company took over eventual ownership of the Hotel, but he likewise served as an intermediary between BDDW and Nine Orchard Partners in an attempt to help those parties resolve their dispute concerning the Agreement.

47.     In fact, Mr. McGuire indicated that Nine Orchard Partners would be willing to pay a portion of any resolution reached between BDDW and Nine Orchard Partners in an attempt to continue the relationship with BDDW after Nine Orchard Owner took over ownership of the Hotel.

C.     **Defendants Thorson and Song Tortiously Interfere with the Parties' Business Relationships**

48.     Beginning in 2022 (i.e., years after the Agreement was entered into), Defendants Jonathan Thorson and Grace Song became judgment creditors of BDDW and Mr. Hays pursuant to an action pending in the Philadelphia County Court of Common Pleas.

49.     During the summer of 2025, Plaintiffs were engaged in active discussions with representatives of Nine Orchard Partners and Nine Orchard Owner concerning resolution of the parties' disputes arising out of the Agreement, including payment of the outstanding balance and the status of the Art and Objects installed in the Penthouse Suites.

50.     As part of those discussions, the incoming owner of the Hotel, through its Chief Executive Officer Mr. McGuire, expressed interest in resolving the dispute and continuing a

professional relationship with Plaintiffs following the anticipated transfer of ownership of the Hotel.

51.    These discussions constituted a prospective contractual and business relationship between Plaintiffs and Nine Orchard Partners and/or Nine Orchard Owner, with a reasonable probability of settlement and continued collaboration.

52.    During this same period, and with knowledge of the ongoing dispute between Plaintiffs and Nine Orchard Partners, Defendants Thorson and/or Song caused or directed the service of a Notice of Levy and Sale and Execution upon Nine Orchard Partners, seeking to collect funds allegedly owed by Nine Orchard Partners to BDDW.

53.    The service of the levy specifically targeted the sums due under the parties' Agreement and placed Nine Orchard Partners in a position where any payment to Plaintiffs would be subject to enforcement efforts by Defendants Thorson and Song.

54.    Upon information and belief, and based upon communications from individuals with knowledge of discussions between Defendants and representatives of Nine Orchard Partners and/or Nine Orchard Owner, Defendants Thorson and/or Song made false and disparaging statements concerning BDDW and/or Mr. Hays in the context of the ongoing dispute.

55.    Upon information and belief, these statements included assertions that BDDW was no longer operating as a legitimate business entity, that BDDW was not entitled to payment under the Agreement, and/or that Plaintiffs were attempting to evade or avoid lawful financial obligations.

56.    The statements described above were materially false, were made with the intent to undermine Plaintiffs' credibility and negotiating position, and were communicated to decision-makers at Nine Orchard Partners and/or Nine Orchard Owner during active settlement discussions.

11

Upon information and belief, these false and disparaging statements materially contributed to the disruption of negotiations and constituted improper means of interference under Pennsylvania law.

57.     In conjunction with the service of the levy, Nine Orchard Partners also retained Kerry Gotlib, who serves as counsel to Defendant Thorson, to represent Nine Orchard Partners in connection with the dispute with Plaintiffs.

58.     After retaining counsel aligned with Defendants Thorson and Song, Nine Orchard Partners ceased meaningful settlement discussions with Plaintiffs and adopted litigation positions adverse to Plaintiffs that were consistent with the interests of Defendants Thorson and Song as judgment creditors.

59.     Defendants Thorson and Song were aware that Plaintiffs were attempting to resolve their dispute with Nine Orchard Partners and/or Nine Orchard Owner and that a negotiated resolution would have resulted in payment to Plaintiffs and the preservation or restructuring of the parties' business relationship going forward.

60.     By causing or directing enforcement action against Nine Orchard Partners for the specific purpose of intercepting funds owed to Plaintiffs, and by aligning themselves with Nine Orchard Partners through shared counsel and coordinated litigation posture, Defendants Thorson and Song intentionally interfered with Plaintiffs' existing contractual rights and prospective business relationship.

61.     As a direct and proximate result of Defendants Thorson's and Song's conduct, settlement discussions were disrupted, Plaintiffs were deprived of the opportunity to resolve the dispute on mutually agreeable terms, and Plaintiffs suffered additional economic and reputational harm.

62.     Defendants Thorson's and Song's conduct was intentional, unjustified, and undertaken for the purpose of advancing their own financial interests at the expense of Plaintiffs' contractual and business relationships.

**D.      The Current Hotel Owner Continues to Violate the VARA**

63.     Following the interference described above, and after settlement discussions broke down, the Current Hotel Owner ultimately assumed possession of the Art and Objects.

64.     Upon information and belief, the Penthouse Suites remain furnished in violation of the Agreement to this day, despite Mr. Hays specifically communicating multiple times with Mr. McGuire that despite the fact that he would be open to starting "fresh" with the New Hotel Owner, he could not have the original Art and Objects displayed in the Hotel any longer after Prior Hotel Owner materially altered it.

65.     In fact, during an August 4, 2025 text communication with Mr. McGuire, Mr. Hays specifically indicated that as he had said in the past, he was planning on suing Nine Orchard Partners "to get the furniture back.  And for damages and the related fees."  In that communication, Mr. Hays referred to the situation as "super unfortunate" and said that "[w]e can work fresh on another project maybe, [t]his doesn't seem like the one…"

66.     In response, Mr. McGuire stated that he knew "where [Mr. Hays] want[ed] to be" and offered to pay "for design fees and buy any other furniture to complete the suites…"

67.     Mr. Hays immediately responded and reiterated that he was "not interested in working on [the Penthouse Suites] with a bunch of stuff that was basically stolen."  Mr. Hays then specifically stated "I want the art and furniture back plus damages and a cease [and] desist to not use my name in any marketing.  I don't want anything to do with that place.  Nothing personal."

68.     Mr. McGuire responded to Mr. Hays the same day and said, "I totally understand, trying to help."

69.     Accordingly, Mr. McGuire confirmed both that he was aware of the various issues raised by Mr. Hays and that he was "trying to help" resolve them as he took ownership of the Hotel.

70.     Mr. McGuire followed up with Mr. Hays in October 2025 to see if Mr. Hays had resolved any of the issues with the Prior Hotel Owner.  Mr. Hays indicated that his position had remained the same as previously.

71.     In response, Mr. McGuire attempted to reassure Mr. Hays that "Andy has no ownership in the hotel anymore and will no longer be involved in the property starting in January."

72.     Thus, Mr. McGuire confirmed that beginning in January, at the very latest, he would be in total control of the Hotel and obviously could partially rectify Plaintiffs' issues by removing the Art and Objects from the Penthouse Suites as repeatedly demanded by Plaintiffs and their representatives.

73.     As of the date of this filing, however, Mr. McGuire has not returned any of the Art and Objects or done anything to restore the Penthouse Suites to their original décor.

74.     In fact, as discussed above, a review of the Hotel's website and promotional materials prominently features images of the Penthouse Suites displaying the painted tapestry against the newly repainted red backdrop.

75.     Accordingly, notwithstanding Mr. McGuire's overtures that he was "trying to help" and that he understood "where [Mr. Hays] want[ed] to be," the Art and Objects remain on display without authorization in violation of the VARA.

## COUNT I
### (Against Defendants Nine Orchard Partners and Nine Order Owner for Violation of the Visual Artists Rights Act, 17 U.S.C. § 106A)

76.     Plaintiffs reallege and incorporate by reference the allegations set forth above as if fully restated herein.

77.     Plaintiff Hays is the author and creator of original works of visual art protected under the VARA, including a large-scale, hand-painted tapestry that constitutes a pictorial or painted work within the meaning of the statute. The tapestry (and other original works) is a unique, non-functional artistic work authored and executed by Hays as a standalone work of fine art and forms part of the Art and Objects installed in the Penthouse Suites.

78.     Each of the Art and Objects constitutes a "work of visual art" within the meaning of the VARA, in that they are original works of visual art, including sculptures and limited-edition works of recognized stature.

79.     The Art and Objects are not mass-produced or utilitarian commercial goods. Rather, they are original artistic creations authored by Hays, all of which are one-of-a-kind or part of strictly limited editions, and are recognized within the design and art communities as works of fine art.

80.     At all relevant times, Hays retained his moral rights under the VARA, including the right to prevent any intentional distortion, mutilation, modification, or destruction of the Art and Objects that would be prejudicial to his honor or reputation.

81.     Without Hays's knowledge or consent, Nine Orchard Partners and/or Nine Orchard Owner intentionally altered and modified the Art and Objects, including by repainting the room in which the large-scale painted tapestry is installed from its original white backdrop to a deep red

color, materially changing the visual contrast, tonal relationship, and aesthetic presentation of the tapestry.

82.    The alteration of the wall color surrounding the tapestry materially distorts the intended expressive effect of the work and substantially deviates from Hays's approved artistic presentation. Nine Orchard Owner has continued to publicly display and commercially exploit the altered presentation while attributing the Penthouse Suites to Hays.

83.    These actions constitute intentional modification and distortion of the Art and Objects within the meaning of 17 U.S.C. § 106A(a)(3), and were undertaken in a manner prejudicial to Hays's honor and reputation.

84.    The continued public display of the altered Art and Objects in the Hotel's most premium suites, in conjunction with attribution to Hays, falsely conveys that the altered presentation reflects Hays's artistic judgment and creative intent.

85.    As a direct and proximate result of Nine Orchard Partners' and Nine Orchard Owner's violations of VARA, Hays has suffered and continues to suffer irreparable injury to his honor, reputation, and professional standing.

86.    Plaintiffs are entitled to declaratory and injunctive relief pursuant to 17 U.S.C. §§ 106A and 502, including but not limited to an order prohibiting further unauthorized modification or prejudicial display of the Art and Objects, requiring removal or restoration of the Art and Objects, and awarding actual damages, statutory damages where applicable, attorneys' fees, costs, and such other relief as the Court deems just and proper.

## COUNT II
### (Against Defendant Nine Orchard Partners for Breach of Express Oral Agreement)

87.    Plaintiffs reallege and incorporate by reference the allegations set forth above as if fully restated herein.

88.    On or about October 8, 2021, BDDW and Nine Orchard Partners entered into the Agreement, which was consummated orally following a series of negotiations between the parties.

89.    The Agreement required that BDDW, through Mr. Hays, would design the Penthouse Suites with the Art and Objects, would be provided with complete and total design control over the design of the Penthouse Suites, as the parties' collaboration would be made public, and, as consideration, Plaintiffs would be provided with the ability to promote its design of the Penthouse Suite to benefit its business.

90.    In addition, BDDW would be paid a $260,000 service fee across two payments.

91.    Consistent with the Agreement, on October 8, 2021, BDDW issued Nine Orchard Partners the Invoice, which states that "[a]ll furniture, rugs, art, and lighting" for both rooms (i.e., the Art and Objects) was being selected and installed exclusively "per Tyler Hays" and Nine Orchard Partners is to pay $260,000 service fee across two payments.

92.    On October 26, 2021, Nine Orchard Partners remitted a deposit payment to BDDW in the amount of $130,000, consistent with the Agreement.

93.    Over the following two years, BDDW's representatives made no fewer than 20 site visits to the Hotel and engaged in countless communications with Nine Orchard Partners; representatives as the project was ongoing. During this period, Plaintiffs ultimately supplied as part of its design services approximately $800,000 worth of Art and Objects exclusive of the value of the design services.

94.    In reasonable reliance on the Agreement and with Nine Orchard Partners' full knowledge and participation, Plaintiffs proceeded to design and furnish the Penthouse Suites exclusively in accordance with the creative direction of Mr. Hays.

95.    BDDW completed its provision of design services and the delivery and installation of all contracted items, including furniture, rugs, art, and lighting (i.e., the Art and Objects), and on or about August 17, 2023, informed Nine Orchard Partners that it had fulfilled its obligations under the Agreement, which would have triggered the completion payment.

96.    Nine Orchard Partners breached the Agreement by, among other things, refusing to pay the remaining $130,000 required upon completion of the exclusive design services of the Penthouse Suites.

97.    Nine Orchard Partners additionally breached the Agreement by materially interfering with BDDW's performance by altering Mr. Hays' completed design of the Penthouse Suites without Mr. Hays' knowledge or consent, despite the Agreement's express provision that BDDW, through Mr. Hays, would maintain exclusive creative control of the design, furnishing, and/or staging of the two Penthouse Suites.

98.    To mitigate its damages, after learning of Nine Orchard Partners' alterations to BDDW's exclusive design of the Penthouse Suites and refusal to pay the completion payment, Plaintiffs sought a return of the Art and Objects. Nine Orchard Partners refused to return the Art and Objects despite repeated requests.

99.    As a direct and proximate result of Nine Orchard Partners' breaches, Plaintiffs have suffered damages in an amount to be determined at trial, including but not limited to the loss of the intended promotional value of the exclusive design control of the Penthouse Suites, the

degradation in value of the Art and Objects, significant reputational harm, the loss of intended reputational value, and the wrongful retention of Plaintiffs' valuable property.

## COUNT III
### (Against Defendant Nine Orchard Partners for Breach of Implied Contract)

100.    Plaintiffs reallege and incorporate by reference the allegations set forth above as if fully restated herein.

101.    During the period from early 2019 to 2021, the Plaintiffs and Nine Orchard Partners took part in extensive negotiations in connection with Plaintiff Hays providing design services for the Penthouse Suites at the Hotel.

102.    On or about October 8, 2021, the BDDW and Nine Orchard Partners reached an implied agreement that required that BDDW, through Mr. Hays, would design the Penthouse Suites with the Art and Objects, would be provided with complete and total design control over the design of the Penthouse Suites, as the parties' collaboration would be made public, and, as consideration, Plaintiffs would be provided with the ability to promote its design of the Penthouse Suite to benefit its business.  In addition, BDDW would be paid a $260,000 service fee across two payments.

103.    Consistent with, and as further evidence of, this implied agreement, on October 8, 2021, BDDW issued Nine Orchard Partners the Invoice, which stated that "[a]ll furniture, rugs, art, and lighting" for both rooms (i.e., the Art and Objects) was being selected and installed exclusively "per Tyler Hays" and Nine Orchard Partners is to pay $260,000 across two payments.

104.    On October 26, 2021, Nine Orchard Partners remitted a deposit payment to BDDW in the amount of $130,000, consistent with the implied Agreement.

105.    In reasonable reliance on the implied Agreement with Nine Orchard Partners, and with Nine Orchard Partners' full knowledge and participation, BDDW proceeded to design and furnish the Penthouse Suites exclusively in accordance with the creative direction of Mr. Hays.

106.    Over the following two years, BDDW's representatives made no fewer than 20 site visits to the Hotel and engaged in countless communications with Nine Orchard Partners' representatives as the project was ongoing.

107.    During this period, Plaintiffs ultimately supplied as part of its design services and Arts and Objects in an amount in excess of $800,000 exclusive of the value of the design services.

108.    Plaintiffs completed the provision of design services and the delivery and installation of all contracted items, including furniture, rugs, art, and lighting (i.e., the Art and Objects), and on or about August 17, 2023, informed Nine Orchard Partners that Plaintiffs had fulfilled its obligations under the parties' implied Agreement, which would have triggered the completion payment.

109.    Nine Orchard Partners breached the parties' implied Agreement by, among other things, refusing to pay the remaining $130,000 required upon completion of the design services.

110.    Nine Orchard Partners additionally breached the parties' implied agreement by materially interfering with Plaintiffs' performance by altering the completed design of the Penthouse Suites without Plaintiffs' knowledge or consent, despite the parties' implied Agreement that Mr. Hays would maintain exclusive creative control of the design, furnishing, and/or staging of the two Penthouse Suites.

111.    To mitigate its damages, after learning of Nine Orchard Partners' alterations to Plaintiffs' exclusive design of the Penthouse Suites and refusal to pay the completion payment, Plaintiffs sought a return of the Art and Objects.

112.    Nine Orchard Partners refused to respond to Plaintiffs' repeated requests.

113.    As a direct and proximate result of Nine Orchard Partners' breaches, Plaintiffs have suffered damages in an amount to be determined at trial, including but not limited to the loss of the intended promotional value of the exclusive design control of the Penthouse Suites, the degradation in value of the Art and Objects, significant reputational harm, the loss of intended reputational value, and the wrongful retention of Plaintiffs' valuable property.

## COUNT IV
### (Against Defendant Nine Orchard Partners for Promissory Estoppel – Pleaded in the Alternative)

114.    Plaintiffs reallege and incorporate by reference the allegations set forth above as if fully restated herein.

115.    In the alternative to the existence of an enforceable express or implied contract, Nine Orchard Partners made clear and definite promises to Plaintiffs, including promises that: (a) BDDW would be paid a total service fee of $260,000 in two installments; (b) Mr. Hays would retain exclusive creative control over the design and presentation of the Penthouse Suites; and (c) Plaintiffs would be publicly associated as the exclusive designer of the Penthouse Suites.

116.    Nine Orchard Partners reasonably expected that Plaintiffs would rely upon these promises by committing substantial time, labor, expertise, and valuable Art and Objects to the Penthouse Suites project.

117.    Plaintiffs did, in fact, reasonably and foreseeably rely upon Nine Orchard Partners' promises by designing, furnishing, staging, and installing the Penthouse Suites with original Art and Objects having a market value in excess of $800,000, and by materially discounting their services and goods in reliance on the agreed-upon compensation and promotional benefits.

118.    Plaintiffs' reliance was substantial and detrimental. Plaintiffs would not have supplied the Art and Objects and associated design services at the agreed-upon discounted fee had Nine Orchard Partners not made the promises described above.

119.    Injustice can be avoided only by enforcement of Nine Orchard Partners' promises.

120.    As a direct and proximate result of Nine Orchard Partners' failure to honor its promises, Plaintiffs have suffered damages in an amount to be determined at trial, including but not limited to the unpaid Completion Payment, the loss of promotional and reputational value, and the degradation in value of the Art and Objects.

## COUNT V
### (Against Nine Orchard Partners for Account Stated)

121.    Plaintiffs reallege and incorporate by reference the allegations set forth above as if fully restated herein.

122.    On or about October 8, 2021, BDDW issued Nine Orchard Partners the Invoice, which specified that the design and furnishing of the Penthouse Suites would be performed exclusively "per Tyler Hays," BDDW's creative leader, and that Nine Orchard Partners would pay a total of $260,000 across two payments, $130,000 at the commencement of performance of the services provided for under Invoice, and the $130,000 upon completion of the performance of the services provided for under the Invoice.

123.    Nine Orchard Partners accepted the Invoice as correct, and at no point did Nine Orchard Partners contest or otherwise object to the Invoice.

124.    During the parties' discussions and interactions, Nine Orchard Partners promised to pay the Invoice and otherwise comply with its terms.

125.    On or about October 26, 2021, Nine Orchard Partners transmitted the $130,000 deposit to BDDW via wire transfer, consistent with the Invoice, thereby further demonstrating its acceptance of the Invoice as correct and reinforcing its promise to pay the Invoice.

126.    In reasonable reliance on the Invoice and with Nine Orchard Partners' full knowledge and participation, BDDW proceeded to design and furnish the Penthouse Suites exclusively in accordance with the creative direction of Mr. Hays.

127.    Over the following two years, BDDW's representatives made no fewer than 20 site visits to the Hotel and engaged in countless communications with Nine Orchard Partners' representatives as the project was ongoing. During this period, BDDW ultimately supplied as part of its design services approximately $800,000 worth of Art and Objects exclusive of the value of the design services. At no point during this period did Nine Orchard Partners object to the Invoice.

128.    BDDW completed the provision of design services and the delivery and installation of all contracted items, including furniture, rugs, art, and lighting (i.e., the Art and Objects), and on or about August 17, 2023, informed Nine Orchard Partners that it had fulfilled its obligations under the Invoice, which would have triggered the $130,000 completion payment.

129.    Nine Orchard Partners failed and refused to pay the Completion Payment, in direct breach of its payment obligations under the Invoice.

130.    To mitigate its damages, after learning of these alterations to BDDW's exclusive design of the Penthouse Suites, BDDW sought a return of the Art and Objects. Nine Orchard Partners has refused to respond to BDDW's requests and, to this date, maintains possession of the Art and Objects.

131.    As a direct and proximate result of Nine Orchard Partners' failure to pay the Invoice, BDDW has suffered damages in an amount to be determined at trial, including but not

limited to the loss of the outstanding $130,000 completion payment, the loss of the intended promotional value of its exclusive design rights and attendant reputational harm, the wrongful retention of the Art and Objects, and the degradation in value of the Art and Objects.

<u>COUNT VI</u>
**(Against Nine Orchard Partners and Nine Orchard Owner for Unjust Enrichment)**

132.    Plaintiffs reallege and incorporate by reference the allegations set forth above as if fully restated herein.

133.    Plaintiffs provided Nine Orchard Partners and Nine Orchard Owner each with substantial value in the form of labor, expertise, and creative services of its principal creative director, Mr. Hays, as well as high-end, custom-designed furniture, rugs, art, and lighting (i.e., the Art and Objects), in designing and staging the two Penthouse Suites at the Hotel.

134.    The total market value of the Art and Objects provided by BDDW was more than $800,000 exclusive of the value of the design services.

135.    Nine Orchard Partners accepted the benefit of BDDW's goods and services, installed the Art and Objects, and has continuously used and retained them to promote, enhance, and operate its high-end luxury Hotel.  These same benefits are now currently being enjoyed by the Hotel's current owner, Nine Orchard Owner.

136.    Nine Orchard Partners' and/or Nine Orchard Owner's retention and continued use of Plaintiffs' valuable property and services, without full payment or return, and by wrongfully interfering with Plaintiffs' exclusive design of the Penthouse Suites and, accordingly, its ability to promote its business through such design, is inequitable and unjust.

137.    Nine Orchard Partners and Nine Orchard Owner have been unjustly enriched at Plaintiffs' expense and have retained a benefit when it would be inequitable for Nine Orchard Partners and/or Nine Orchard Owner to retain that benefit without compensating Plaintiffs.

138.    Plaintiffs have suffered damages in an amount to be determined at trial, but believed to be no less than the fair market value of the retained Art and Objects and design services provided by Plaintiffs.

## COUNT VII
### (Against Song and Thorson for Tortious Interference)

139.    Plaintiffs reallege and incorporate by reference the allegations set forth above.

140.    At all relevant times, Plaintiffs had: (a) an existing contractual relationship with Defendant Nine Orchard Partners pursuant to the Agreement described above; and (b) a prospective contractual and business relationship with Nine Orchard Partners and/or Nine Orchard Owner arising from active settlement discussions and negotiations during the summer of 2025.

141.    These relationships included Plaintiffs' right to receive payment of the outstanding completion payment, to negotiate resolution of disputes arising under the Agreement, and to pursue continued collaboration or restructuring of the parties' business relationship following the anticipated transfer of ownership of the Hotel.

142.    Defendants Thorson and/or Song were aware of Plaintiffs' contractual rights and the ongoing negotiations between Plaintiffs and Nine Orchard Partners and/or Nine Orchard Owner.

143.    During this time, Defendants Thorson and/or Song caused or directed the service of a Notice of Levy and Sale and Execution upon Nine Orchard Partners, seeking to intercept and obtain funds owed to Plaintiffs under the Agreement.

144.    Upon information and belief, Defendants Thorson and Song undertook this enforcement action with knowledge that it would interfere with Plaintiffs' ability to resolve the dispute directly with Nine Orchard Partners and/or Nine Orchard Owner.

145.    Nine Orchard Partners likewise retained counsel who simultaneously represented Defendant Thorson in related proceedings and thereafter ceased meaningful settlement discussions with Plaintiffs.

146.    Upon information and belief, Defendants Thorson and Song coordinated or aligned their enforcement strategy with Nine Orchard Partners' litigation posture in a manner designed to prevent Plaintiffs from obtaining direct payment or negotiated resolution of their contractual claims.

147.    Defendants Thorson's and Song's conduct went beyond the mere passive collection of a judgment and instead constituted intentional interference with Plaintiffs' existing contractual rights and prospective business relationships.

148.    Defendants' interference was intentional and undertaken for the purpose of advancing their own financial interests at Plaintiffs' expense.

149.    Defendants Thorson's and Song's conduct was not privileged or justified under the circumstances under Pennsylvania law, as it was directed toward disrupting Plaintiffs' settlement negotiations and contractual recovery rather than merely enforcing a judgment in a neutral manner.

150.    As a direct and proximate result of Defendants Thorson's and Song's conduct, settlement discussions were materially disrupted, Plaintiffs were deprived of the opportunity to resolve their claims on mutually agreeable terms, and Plaintiffs suffered additional economic harm, delay, and reputational injury.

151.    Plaintiffs are entitled to compensatory damages, consequential damages, and such other relief as the Court deems just and proper.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs prays for the following relief:

A.  A declaratory judgment that Defendants Nine Orchard Partners, LLC and Nine Orchard Owner, LLC have violated Plaintiff Hays' rights under the Visual Artists Rights Act, 17 U.S.C. § 106A;

B.  A permanent injunction pursuant to 17 U.S.C. §§ 106A and 502:

   1.  Prohibiting Defendants from further modifying, altering, distorting, or publicly displaying the Art and Objects in a manner prejudicial to Plaintiff Hays's honor or reputation;

   2.  Requiring Defendants to remove the Art and Objects from public display unless restored to their original artist-approved presentation;

   3.  Requiring Defendants to cease use of Plaintiff Hays' name in connection with the altered Penthouse Suites; and

   4.  Requiring removal of images of the altered Art and Objects from Defendants' website, marketing materials, and promotional channels;

C.  An order directing the immediate return of all Art and Objects belonging to Plaintiffs, including the large-scale painted tapestry and all other protected works, at Defendants' expense;

D.  Compensatory damages in an amount to be determined at trial, including but not limited to:

   1.  The unpaid Completion Payment of $130,000;

   2.  The degradation in value of the Art and Objects;

   3.  The loss of promotional and reputational value that formed a material part of the parties' Agreement; and

   4.  Economic losses resulting from Defendants' interference and delay.

E.  Statutory damages, where applicable under VARA;

F.  Consequential and incidental damages arising from Defendants' breaches and wrongful conduct;

G.  Punitive damages against Defendants Thorson and Song for their intentional and unjustified interference with Plaintiffs' contractual and prospective business relationships;

H.  Pre-judgment and post-judgment interest as permitted by law;

I.  Costs of suit and reasonable attorneys' fees, including pursuant to 17 U.S.C. § 505; and

J.  Such other and further legal or equitable relief as the Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs respectfully demand a trial by jury for all issues so triable.


Dated: March 2, 2026                    Respectfully submitted,


By:*/s/ Joseph M. Profy*
Joseph M. Profy
**Gallucci & Profy LLC**
1812 Berlin Road
Cherry Hill, NJ 08003
Telephone:  267-732-1221
jprofy@galluciandprofy.com
**Attorney for Plaintiffs**